IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COOKEVILLE DIVISION

HAROLD ENGLAND, )
)
    Plaintiff, )
)
v. ) NO. 2:05-0008
) JUDGE HAYNES
DAVID ANDREWS, SHERIFF OF )
PUTNAM COUNTY, TENNESSEE )
)
    Defendant. )

## MEMORANDUM

Plaintiff, Harold England, originally filed this action under 42 U.S.C. §§ 1981[1] and 1983 in the Circuit Court of Putnam County against the Defendant David Andrews, Sheriff of Putnam County, Tennessee, his former employer. Plaintiff asserts a claim for denial of procedural due process under the Fourteenth Amendment when the Defendant terminated him without a proper hearing after a prisoner committed suicide at the jail. The Defendant removed the action to this Court without objection.

Before the Court is the Defendant's motion for summary judgment (Docket Entry No. 7) contending, in sum, that the Plaintiff does not have any entitlement to his continued employment under any law, ordinance or policy of the county and is an employee at will who can be terminated at any time with or without cause. Moreover, Plaintiff was given a hearing prior to his termination.

In his response, Plaintiff contends that under the Defendant's policy, he could be

---

[1] Section 1981 is limited to racial discrimination claims involving contracts and is not shown to be applicable here and will not be considered any further. Runyon v. McCrary, 427 U.S.160, 170 (1976).

discharged only for "just cause" and thereby has a property interest in his continued employment with the Defendant. Plaintiff also argues that his meeting with the Defendant did not satisfy due process requirements because the Defendant did not afford him any procedural rights to confront and cross examine witnesses or to present his view of his role in the event at issue.

## A. Findings of Fact[2]

The undisputed facts are that on December 20, 2003, Jason Bender, an inmate at the Putnam County jail committed suicide. (Docket Entry No. 10, Andrews Affidavit at p. 1). Andrews conducted an investigation of Bender's death and discovered that England completed forms that he checked two cell areas at the jail, including Bender's cell area, but in fact, England did not make these rounds. Id. at p. 2.

Andrews had a meeting with England to discuss England's options to resign or to be fired. Id. A transcript of that meeting is attached to Andrews' affidavit. In this transcript, England did not challenge Andrew's decision to fire him, but only asked for a day to consider his options. In this meeting, as to the incident, England told Andrews "I was covered-over that night, and I tried my best to get both sides" and "that I didn't to into Safe 2." Id. Attachment No. 1 thereto, Transcript at p. 2. Andrews insists that England never requested any name-clearing hearing. Id. at p. 2.

---

[2]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986) app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Based upon its review of the record, there are not any material factual disputes. Thus, this section constitutes findings of facts under Fed. R. Civ. P. 56(d).

2

For his property interest claim, England cites the Sheriff office policy on employees that provides, in pertinent part:

> Policy embodies the philosophies, attitudes, values and intention of management. No arbitrary rule of procedure can be established that will embrace all possible situation which may arise in an organization such as the Department. Therefore, some matters must necessarily be left to the discretion and sound judgment of the individual employee. However, that discretion and judgment must not be contrary to existing state and country laws and/or the expectations of this Department.
>
> The policies and procedures contained herein shall be the official policy of the Putnam County Sheriff's Department, unless specifically altered in writing by the Sheriff.
>
> * * *
>
> Dismissal: The Jail Administrator may dismiss an employee for just cause, <u>provided any disciplinary action taken by the Jail Administrator can be supported by the evidence strong enough to bear the burden of proof of just cause for such disciplinary action. An employee who is dismissed will be given notice of the reason for the action</u>. Employees may appeal the action by submitting a written appeal to the Sheriff within three (3) working days. The Sheriff's decision is final.
>
> Note: The above disciplinary procedures are not listed in a order of action and may be implemented for just cause, in any order according to the violation.

(Docket Entry No. 11, Attachment thereto at pp. 1, 25). (emphasis added).

## B. Conclusions of Law

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment <u>sua sponte</u>, so long as the opposing party was on notice that she had to come forward with all of her evidence." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986). <u>Accord</u>, <u>Routman v. Automatic</u>

3

Case 2:05-cv-00008   Document 14   Filed 09/08/05   Page 3 of 13 PageID #: 3

Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment</u>. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrating the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that

> The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1480 (cites omitted). See also Hutt v. Gibson Fiber Glass Products, No. 89-5731

5

(6th Cir. filed September 19, 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." quoting <u>Liberty Lobby</u>)).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.
>
> * * *
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed</u>.'

<u>Liberty Lobby</u>, 477 U.S. at 248, 252, 106 S. Ct. 2505, 91 L.Ed.2d at 211-212, 214 (citation omitted and emphasis added).

It is likewise true that

> [I]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely

6

> scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Company, 791 F.2d. 43, 46 (6th Cir. 1986) app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion) (citation omitted).

The Court of Appeals further explained the District Court's role in evaluating the proof on a summary judgment motion

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) cert. denied 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). Here, the parties have given some references to the proof upon which they rely. Local Rule 8(b)(7)(A) and (C) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions,

7

and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing `the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: `whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6. As on federal directed verdict motions, the `scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must `present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the `old era' in evaluating the respondent's evidence. The respondent must `do more than simply show that there is some metaphysical doubt as to the material facts.' Further, `[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is `implausible.

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

Plaintiff's claim invokes his right under the Fourteenth Amendment to procedural due process in his termination. The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property without due process of law...." U.S.C0NST. amend. XIV, § 1. For rights arising under the Due Process Clause, there are critical distinctions between procedural due process and substantive due process. Howard v. Grinage, 82 F.3d 1343, 1349 (6th Cir. 1996). As distinguished from a substantive due process limitation, a procedural due process limitation "does not require that the government refrain from making a substantive choice to infringe upon a person's life, liberty, or property interest. It simply requires that the government provide 'due process' before making such a decision." Id. In a word, procedural due process prohibits arbitrary and unfair deprivations of protected life, liberty, or property interests without procedural safeguards." Id. at 1350. Plaintiff contends that his failure to receive a "name-clearing" hearing violated his right to procedural due process.

A plaintiff must establish three elements to establish a procedural due process claim under 42 U.S.C. § 1983:

9

(1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest.

Hahn v. StarBank, 190 F.3d 708, 716 (6th Cir. 1999).

Here, Plaintiff asserts a property interest in his position based upon the Sheriff's personnel manual. As to termination, this policy provides that:

> Dismissal: The Jail Administrator may dismiss an employee for just cause, <u>provided any disciplinary action taken by the Jail Administrator can be supported by the evidence strong enough to bear the burden of proof of just cause for such disciplinary action</u>. An employee who is dismissed will be given notice of the reason for the action. Employees may appeal the action by submitting a written appeal to the Sheriff within three (3) working days. The Sheriff's decision is final.
>
> Note: The above disciplinary procedures are not listed in a order of action and may be implemented for just cause, in any order according to the violation.

(Docket Entry No. 11, Attachment thereto at pp. 1, 25). (emphasis added).

Under certain circumstances, an employee may have a property interest in public employment, but whether that interest exist, is determined by state law. Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). In Gregory, the Sixth Circuit noted:

> The Supreme Court has recognized that an individual may have a "property" interest in public employment. In Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), the Court stated:
>
> > Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

Id. According to Roth, the Court must examine Tennessee law and any other relevant "rules or understandings that stem from" Tennessee law to determine whether Plaintiff has a property

10

Case 2:05-cv-00008 Document 14 Filed 09/08/05 Page 10 of 13 PageID #: 10

interest in continued employment. See id.

Tennessee follows the employment at-will doctrine. The Tennessee Supreme Court has held that an employee does not have a property interest in employment:

> The employment at-will doctrine has been a part of Tennessee's common-law legal tapestry for more than a century. The doctrine recognizes the concomitant right of either party to terminate such a relationship with or without cause. On the other hand, a contract of employment for a definite term may not be terminated before the end of the term, except for good cause or by mutual agreement, unless the right to do so is reserved in the contract. It is possible that some contractual right might accrue to an employee as the result of an unlawful termination of such a contract. <u>However, without a clear contract under which such rights may vest, employees in this State possess no property right in their employment under the circumstances which we have at hand</u>. We know of no court decision, nor have we been referred to one, which holds that an employee has a contractual right under the employment at-will doctrine.

Bennett v. Steiner-Liff Iron and Metal Co., 826 S.W.2d 119, 121 (Tenn. 1992) (emphasis added) (internal citations omitted). Under Tennessee law, absent an explicit employment contract for a definite term, employees are employees at-will and they lack any property right in their continued employment. See id.

It is an undisputed fact that under the Sheriff's policy, an employee of his office could be terminated at any time. The fact weights in favor of concluding that England was an at-will employee.

Yet, an at-will employee who has a reasonable expectation that his or her employment will only be terminated for cause, may acquire a property interest in continued employment. The Gregory court clarified:

> An at-will public employee does not have a property interest in continued employment unless it can be shown that the employee had a reasonable expectation that termination would only be for good cause. See Chilinairian v. Boris, 882 F.2d 200, 203 (6th Cir. 1989) ("a public employee does not have a property interest in continued employment when his position is held at the will

and pleasure of his superiors and when he has not been promised that he will only be terminated for good cause"); Bleeker v. Dukakis, 665 F.2d 401, 403 (1st Cir. 1981) ("This lack of any reasonable expectation of continued employment suffices to establish the lack of 'property' in the constitutional sense, and hence, the lack of a viable due process claim.").

24 F.3d at 785. (emphasis added).

In light of Gregory, Plaintiff, as an at-will public employee, can have a property interest in continued employment with the Sheriff if Plaintiff proves a "reasonable expectation" that termination would only be for good cause. Id. Under Tennessee law, an employment relationship may be modified by representations in employee policies or handbook:

> [t]he determination of whether an employee handbook is deemed to be part of the employment contract depends on the specific language of the handbook. Only where the language is specific in stating that the employment manual provides certain guaranteed policies or practices will the employment manual be deemed part of the employment contract. In none of these cases, however, has a court found the terms of an employee handbook converted an at-will employment into a protectible property interest.

Id. (internal citations omitted).

The Court concludes that the Sheriff's employee manual created a "reasonable expectation" that Plaintiff could only be terminated for "just cause." Under this policy, an employee could be terminated, "provided" the termination "can be supported by the evidence strong enough to bear the burden of proof of just cause for such disciplinary action." This language creates a clear and substantive limitation on the Sheriff's authority to terminate an employee of his office. Thus, the Court concludes that this language creates a reasonable expectation that England would not lose his employment except for just cause based upon "strong" evidence. The Court also concludes that with this language England had a property right in continued employment with the Defendant so as not to be terminated without appropriate

12

procedural due process rights.

Yet, the Sheriff met with England and from the tape, England was aware of the purpose of the meeting and admitted that he had not checked the Safe-2 area as reflected on his jail records. Under Gregory, the Defendant "'need only provide an opportunity to clear one's name and need not comply with formal procedures to be valid'" and "[n]o particular procedures are required except that the person receive a hearing at which he receives an opportunity to clear his name." 24 F.3d at 788. With England's admissions and given that the due process clause does not require the full scale evidentiary hearing, the Court concludes that this hearing was sufficient under the circumstances to meet due process standards.

For the reasons set forth above, the Court concludes that the Defendants' motion for summary judgment (Docket Entry No. 8) should be granted.

An appropriate Order is filed herewith.

**ENTERED** this the 7th day of September, 2005.

WILLIAM J. HAYNES, JR.
United States District Judge